IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PAULA L. MASTRO,

        Petitioner,

    v.

COMMISSIONER of Social Security,

        Respondent.

Civil No. 3:12-cv-00134-CL

FINDINGS AND RECOMMENDATION

    LISA R. PORTER
    KP Law LLC
    16200 SW Pacific Hwy
    Suite H-233
    Portland, OR  97224

        Attorney for Petitioner

    S. AMANDA MARSHALL
    United States Attorney
    District of Oregon
    ADRIAN L. BROWN
    Assistant United States Attorney
    1000 SW Third Ave
    Suite 600
    Portland, OR  97204

1 – FINDINGS AND RECOMMENDATION -

DAVID MORADO
Regional Chief Counsel, Region X, Seattle
KEITH SIMONSON
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
1301 Young Street
Suite A-702
Dallas, TX  75202

        Attorneys for Defendant.

CLARKE, Magistrate Judge.

Paula L. Mastro ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c), to obtain judicial review of a final decision of the Commissioner.  The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI") disability benefits under the Act.  For the reasons set forth below, the Commissioner's decision should be AFFIRMED.

## PROCEDURAL BACKGROUND

On February 22, 2008, plaintiff protectively filed an application for SSI.  Tr. 163-165.  After her application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ").  Tr. 102-112, 114-116, 119-123, 127-129, and 124-126.  On March 22, 2010, the Honorable Catherine R. Lazuran conducted an administrative hearing.  Tr. 36-101.  On June 25, 2010, Judge Lazuran issued a decision finding plaintiff not disabled within

the meaning of the Act.   Tr. 17-34.   After the Appeals Council
declined to review the ALJ'S decision, plaintiff filed a
complaint in this Court. Tr. 1-6.

## FACTUAL BACKGROUND

Born in 1973, plaintiff was 32 years old on the alleged
onset date of disability and 36 years old at the time of the
hearing.   She graduated from high school and attended some
college.  Tr.   26.  Plaintiff has previous work experience as a
cashier, dancer, fabrication operator, office clerk, cocktail
waitress, and hostess.   Tr. 90-91, 212.   Plaintiff alleges
disability beginning October 5, 2006, due to attention deficit
disorder, depression, post-traumatic stress disorder ("PTSD"),
general anxiety disorder ("GAD"), bipolar disorder, and past
substance abuse.  Tr. 202.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is
based on proper legal standards and the findings are supported
by substantial evidence on the record.   *Hammock v. Bowen*, 879
F.2d 498, 501 (9th Cir. 1989).   Substantial evidence is "more
than a mere scintilla.   It means such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229
(1938)).   The court must weigh "both the evidence that supports

and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; *see* C.F.R. §§

404.1520(c), 416.920(c).  If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work."  *Yuckert*, 482 U.S. at 141; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can work, he is not disabled; if he cannot perform past relevant work the burden shifts to the Commissioner.  *Yuckert*, 482 U.S. at 141.  At step five, the Commissioner must establish that the claimant can perform other work.  *Id.* at 142; *see* 20 C.F.R. §§ 404.1520(e) & (f); 416.920(e) & (f).  If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

### I.  The ALJ's Findings

At step one of the sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial

gainful activity since February 22, 2008, the date of plaintiff's initial filing. Tr. 19, Finding 1. This finding is not in dispute.

At step two, the ALJ found plaintiff had severe impairments in the form of "a mood disorder; borderline personality disorder or traits; and a history of drug addiction or abuse." Tr. 19, Finding 2. The ALJ found plaintiff had also been treated or evaluated for other symptoms and complaints including asthma, mild and controlled with medication; joint pain, unspecified; sciatica; and wrist tendinitis, but that these alleged impairments, considered singly or together, have caused only transient and mild symptoms, such that these impairments do not constitute severe medically determinable impairments. Tr. 19-20. The ALJ noted plaintiff's alleged fibromyalgia, but that the possible fibromyalgia also caused only transient and mild symptoms and limitations, and does not appear to cause any vocational limitations. Tr. 20. Finally, the ALJ noted the medical records indicate plaintiff is obese, and accordingly considered the effect of her obesity, but concluded it is not severe. *Id*. Plaintiff disputes this finding to the extent she claims she has additional severe impairments of fibromyalgia, anxiety, panic attacks, and agoraphobia.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that meets or medically

equals the requirements of a listed impairment.  Tr. 20, Finding 3.  This finding is not in dispute.

Because plaintiff did not establish disability at step three, the ALJ continued the evaluation process to determine how plaintiff's medical impairments affected her ability to work. The ALJ found plaintiff had the RFC to "perform a full range of work at all exertional levels, but with the following nonexertional limitations:  she can perform simple repetitive tasks and minimally detailed tasks; and she can deal with a low level of pressure regarding deadlines and can have occasional social interaction."  Tr. 21, Finding 4.  Plaintiff disputes the RFC assessment.

At step four, the ALJ found plaintiff was capable of performing past relevant work as an office clerk.  Tr. 25, Finding 5.  While such a finding ordinarily concludes the inquiry, the ALJ proceeded to make alternative findings in a step five analysis, that there were other jobs existing in the national economy that she is able to perform.  Tr. 25. Specifically, the ALJ noted the VE testified plaintiff would be able to perform the requirements of representative occupations such as motel cleaner and industrial cleaner.

## II.  Plaintiff's Allegations of Error

Plaintiff argues the ALJ erred in three respects:  (1) by rejecting plaintiff's testimony without articulating "clear and

convincing reasons;" (2) by failing to comply with the mandatory requirements of SSR 96-8p when determining plaintiff's RFC; and (3) because the ALJ's step four findings are unsupported by the evidence because the hypothetical presented to the VE contained defective RFC findings.

### A.    Plaintiff's Credibility

Plaintiff alleges the ALJ erred by improperly rejecting plaintiff's testimony without articulating clear and convincing reasons for doing so.  In deciding whether to accept subjective symptom testimony, the ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).  At the second stage, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  A general assertion that plaintiff is not credible is not sufficient; the ALJ must "state which . . . testimony is

not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

An ALJ may consider many factors in weighing a claimant's credibility, including ordinary techniques of credibility evaluation, inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct, unexplained or inadequately explained failure to seek treatment or follow prescribed treatment, the claimant's daily activities, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the court is persuaded that the ALJ provided clear and convincing reasons for finding plaintiff's statements "not entirely credible." Tr. 22.[1]  The ALJ noted inconsistencies in

_____

[1]The court recognizes that the ALJ used "disfavored" language in his analysis by explaining that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 22.  An ALJ must consider a claimant's

plaintiff's testimony between her alleged limitations and her conduct; specifically, the ALJ found that plaintiff described daily activities which were not limited to the extent expected given her complaints of disabling symptoms and limitations. Plaintiff testified that she performed a wide range of activities of daily living, such that "she can dress and groom and that she vacuums and sweeps, put dishes in the dishwasher, does laundry, grocery shops, goes to church once a week, and sees a friend." Tr. 22. Moreover, the ALJ noted her testimony that she "is able to take care of her 5 year old son," that she "watches television, can use a computer, drives and reads fiction," and that she attended "AA meetings and went to church." Tr. 22. The ALJ also noted records from October 2008 show plaintiff "reported she was walking 20 minutes a day," and "in March 2008 she reported she could walk ½ mile before resting

_____

credibility in the course of assessing a residual functional capacity (20 C.F.R. § 404.1545(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184)) rather than determining credibility based on the extent to which a claimant's testimony comports with the RFC finding. Despite the ALJ's phrasing, however, the record reflects that the ALJ properly considered plaintiff's credibility in the course of determining the RFC.

and cleaned her apartment daily and occasionally visited friends or relatives." Tr. 22.

The ALJ also found evidence in the medical records which undermined the credibility of plaintiff's allegations. The ALJ noted that plaintiff testified that she is very depressed and has panic attacks, that she does not get along with people, that she cries easily and often does not want to leave the house, and that she has daily crying spells and daily pain. Tr. 22. The ALJ recited the following references in the record which appear to refute plaintiff's claims:

> Records from September 2007 show "her affect tends to be bright" and she has "no evidence of a thought disorder. Memory is fine." In March 2008 she reported she had no pain. In 2008 a psychological consultative examiner gave her [a] GAF of 70 and determined she had few limitations. Mental Health treatment records from February 2009 show only mild symptoms and that she was "generally functioning pretty well, has some meaningful interpersonal relationships" and she was given a GAF of 62.

Tr. 22 (citations to record omitted).

As for failure to seek or follow prescribed treatment, the ALJ noted plaintiff has not always followed through with appointments, recommendations and referrals. Tr. 22. Records

from January 2010 and November 2009 indicated she regularly missed mental health appointments and group sessions, in October 2009 she self-discontinued one of her prescribed medications, and a record from January 2010 indicated "has been minimally engaged in treatment and [is] making little progress toward treatment goals." Tr. 22 (citation to record omitted). Finally, the ALJ found the evidence regarding plaintiff's drug use and dependence, while not determinative, did not bolster her credibility. Tr. 23.

The ALJ properly evaluated plaintiff's testimony and the record as a whole, and gave clear and convincing reasons supported by substantial evidence for discrediting plaintiff's testimony.

### B.   RFC Determination

Plaintiff alleges the ALJ erred by failing to comply with the mandatory requirements of SSR 96-8p when determining her RFC.[2]   She sets forth three reasons:   (1) the ALJ failed to

_____

[2]SSR 96-8p provides in pertinent part:

> Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must

assess and "discuss" whether plaintiff is capable of working on a "regular and continuing basis" for 8 hours a day, 5 days a week;" (2) the ALJ's finding that reduced concentration abilities are addressed by precluding skilled work is contrary to case law; and (3) the ALJ did not address all of the limitations identified by plaintiff, treating medical sources, and examining and non-examining doctors because the ALJ improperly rejected or ignored their opinion and/or medical records.

### 1. Failure to Assess and Discuss Ability to Work on a Regular and Continuing Basis

First, plaintiff alleges the ALJ failed to comply with SSR 96-8p because she failed to specifically assess and discuss plaintiff's ability to work for eight hours a day, five days a week. SSR 96-8p states that "[o]rdinarily, residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8, 1996 WL 374184, *1 (July 2, 1996). Further, "[a] 'regular and continuing basis'

include a discussion of the individual's abilities on that basis.

means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*.

Plaintiff's argument that the ALJ committed legal error because she failed to assess and specifically discuss whether plaintiff is capable of working on a regular and continuing basis for eight hours a day, five days a week is without merit. The ALJ recited the applicable law that RFC is the ability to do physical and mental work activities on a sustained basis despite limitations from impairments. Tr. 18. There is nothing in the ALJ's decision to indicate she did not determine plaintiff's RFC on this basis.

Moreover, there does not appear to be any published opinions in the Ninth Circuit requiring that the ALJ specifically discuss and make particular findings in this regard. In an unreported decision, however, the Ninth Circuit found no error in an ALJ's failure to expressly state his RFC was based on a forty-hour work week. *McCutcheon v. Astrue*, 378 Fed.Appx. 649, 652 (9th Cir. 2010); *see also Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005) (without a showing that claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms, the claimant's ability to maintain sustained employment is subsumed in the RFC determination).

### 2.   Reduced Concentration Abilities

Second, plaintiff next argues the ALJ's finding that reduced concentration abilities are addressed by precluding skilled work is contrary to case law. This argument lacks merit.

The ALJ found that, "[w]ith regard to concentration, persistence or pace, the [plaintiff] has mild difficulties." Tr. 21. Also, in determining plaintiff's RFC, the ALJ noted plaintiff had a psychiatric consultative examination with Dr. Peter Okulitch, PhD., who opined that plaintiff "could perform simple, repetitive and more detailed and complex tasks and can accept instructions from supervisors and 'appears quite friendly and open, and I am sure she will have no problems with either coworkers or the public.'" Tr. 23 (quoting Tr. 784). In light of these findings, the ALJ included as nonexertional limitations in plaintiff's RFC that "she can perform simple repetitive tasks and minimally detailed tasks; and she can deal with a low level of pressure regarding deadlines and can have occasional social interaction." Tr. 21.

Plaintiff's reliance on the cases cited is misplaced. In *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), the ALJ had noted in her opinion and in a Psychiatric Review Technique Form ("PRTF") that the claimant *often* suffered from deficiencies in concentration, persistence, or pace, yet her hypothetical to the VE only limited the claimant to "simple one to two step tasks."

*Ramirez*, 372 F.3d at 554.   The Third Circuit found the hypothetical did not adequately take into account the claimants difficulty in concentration and "[m]ost importantly, this limitation does not take into account deficiencies in pace." *Id*.  Likewise, in *Kirwan v. Apfel*, 1999 WL 962466 (D. Or., Oct. 21, 1999), the ALJ found in the PRTF that the claimant "often has deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner."  *Kirwan*, 1999 WL 962466, *5.   The limitation the ALJ included in the hypothetical to the VE stated simply that the claimant had an inability to follow complex instructions.  *Id*.

Here, the ALJ noted only "mild difficulties" with concentration, which was adequately accounted for in the RFC and hypothetical nonexertional limitation of "simple repetitive tasks and minimally detailed tasks . . . [and] a low level of pressure regarding deadlines."  Tr. 21.  *See Bagby v. Astrue*, 2012 WL 1114298, * 11 (D. Or., Feb. 7), *adopted by* 2012 WL 1114288 (D. Or. Apr. 3, 2012) ("an RFC to perform simple, repetitive tasks [can be] sufficient to accommodate a claimant's moderate limitations in attention, concentration, and social abilities") (citing *Stuggs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008)).

> ### 3. Improper Rejection of Limitations Identified by Plaintiff, Treating Medical Sources, and Examining and Non-Examining Doctors

Third, plaintiff alleges the ALJ failed to comply with SSR 96-8p because she "did not address all of the limitations identified by plaintiff, treating medical sources, and examining and non-examining doctors because the ALJ improperly rejected or ignored their opinion and/or medical records." Pl. Brief, p. 31.[3] In addition, in her Reply Brief, plaintiff argues the ALJ erred in failing to further develop the record with respect to plaintiff's mental illnesses and pain from fibromyalgia exacerbated by her mental illnesses.

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id*. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id*. In addition, a doctor's work restrictions

---

[3]The propriety of the ALJ's determination of plaintiff's credibility is discussed above, and will not be repeated here.

based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than credible. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

The record demonstrates the ALJ addressed all of the limitations identified by plaintiff, her treating medical sources, and examining and non-examining doctors, and further that the ALJ did not improperly reject or ignore their opinions and/or the medical records.

With respect to plaintiff's fibromyalgia, the ALJ acknowledged her diagnosis since 2008, but noted that plaintiff's medical records indicated little more than the diagnosis. Tr. 20. The ALJ noted, moreover, that the rheumatology consultants indicated that fibromyalgia was likely not the appropriate diagnosis for plaintiff's pain. Tr. 20 (citing Tr. 997, 1001). In addition, plaintiff herself stated in October 2008 she was walking 20 minutes a day and that her Cymbalta medication was helping with her pain. Tr. 20, 1004. Moreover, the ALJ noted that plaintiff did not list fibromyalgia as an impairment when she applied for disability benefits, or on any of the subsequent disability forms she submitted. Tr. 20, 202, 245, 281, 300. Substantial evidence supported the ALJ's finding that plaintiff's fibromyalgia caused only transient and mild symptoms and limitations, did not cause any vocational

limitations, and was well controlled with treatment. Accordingly, the ALJ did not fail to comply with SSR 96-8p in determining plaintiff's RFC with respect to her fibromyalgia.

Likewise, the ALJ did appropriately consider and address all of plaintiff's mental limitations, and did not improperly reject or ignore opinions and/or medical records. Plaintiff relied almost exclusively on the conclusions of her medical social worker ("MSW") Celeste Baskett to establish her claim of disabling mental impairments. Plaintiff argues her mental impairments, as identified by Ms. Baskett, create a strong "possibility" that full-time employment would trigger a "mood episode" which would make it difficult for her to maintain attendance and performance.

A social worker is considered an "other" medical source. 20 C.F.R. § 404.1513(d); 416.913(d). As such, a social worker's opinion is not entitled to the weight accorded an "acceptable medical source" under the Commissioner's regulations. *See* 20 C.F.R. § 404.1513(a); 416.913(a); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Evidence from "other sources" may, however, be used to show the severity of the individual's impairments and how the impairment or impairments affects the individual's ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ has a duty to consider these medical professional's opinions and the opinions may be discounted only

if based on reasons germane to the source.    20 C.F.R. §§ 404.1513(d), 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ gave several germane reasons to give Ms. Baskett's opinion little weight.    Tr. 24.    First, the ALJ noted Ms. Baskett was not an acceptable source for medical opinion evidence and her opinion was inconsistent with the opinions of examining psychologists and the record as a whole, including plaintiff's activities of daily living.    Tr. 24.    The ALJ further found Ms. Baskett was vague and ambiguous, and that it appeared she relied on plaintiff's subjective allegations which the ALJ previously found not credible.    Tr. 24.

Moreover, in determining plaintiff's RFC, the ALJ appropriately relied upon opinions expressed by two examining psychologists, Dr. Okulitch and Dr. Adler.    In September 2006, the ALJ noted, plaintiff had a psychiatric consultative examination with Dr. Okulitch.    Tr. 23.    Dr. Okulitch diagnosed plaintiff with bipolar disorder and chronic depression, but opined that plaintiff "could perform simple, repetitive and more detailed and complex tasks and can accept instructions from supervisors and 'appears quite friendly and open, and [was] sure she will have no problems with either coworkers or the public.'" Tr. 23 (quoting Tr. 784).    Dr. Okulitch further opined plaintiff could perform her work activities on a consistent basis so long

as she stays on her medication. *Id.* The ALJ granted Dr. Okulitch's opinion significant weight because he had the opportunity to examine plaintiff and because it was consistent with the record as a whole.

The ALJ also discussed plaintiff's psychological consultative examinations with Dr. Adler in February 2006 and April 2008. Tr. 23. After the 2006 examination, Dr. Adler opined plaintiff's current functioning suggested few major problems in daily activities due to mental factors, but noted concern over the issue her stability over a longer period of time, which was impossible to predict. Tr. 23 (citing Tr. 680). The ALJ noted Dr. Adler's opinion that plaintiff may have some anxiety under stress and that she reported "episodes of very poor functioning" including "behavioral problems and major trouble coping with stress." Tr. 24 (quoting Tr. 950). The ALJ gave Dr. Adler's opinions some weight, because he had the opportunity to examine plaintiff but appeared to rely a great deal upon plaintiff's subjective reporting and her concerns regarding her functioning if she were to relapse into drug use. Tr. 24. The ALJ also expressly related the nonexertional limitations of simple repetitive tasks and minimally detailed tasks with a low level of pressure regarding deadlines and occasional social interaction that he placed on plaintiff's RFC to Dr. Adler's opinion.

The ALJ also discussed a February 2009 mental health assessment plaintiff had with Laurel Mansoor, QMHP, and referred to Ms. Mansoor's opinion that plaintiff showed only mild symptoms or difficulty in social, occupational or school functioning, and that she was "generally functioning pretty well, [and] has some meaningful interpersonal relationships." Tr. 24 (quoting Tr. 1285). The ALJ correctly assigned "some weight" to Ms. Mansoor's opinion as "other" opinion evidence based upon a finding that she had the opportunity to meet with and assess plaintiff and the finding that her opinion was consistent with the record as a whole. Tr. 24.

The ALJ noted the state agency mental consultant opined in April 2008 that plaintiff's most prominent diagnosis is a substance abuse disorder and that she is able to understand, remember and carry out short instruction (1-2 steps) and that she is likely able to understand, remember and carry out more detailed instruction, but more complex tasks are also likely to cause an increase in bipolar symptoms, so she should be limited to simple repetitive work. Tr. 24 (citing Tr. 968, 972).

Finally, to the extent plaintiff contends the ALJ should have further developed the record on the fibromyalgia and mental limitation issues, plaintiff's argument is without merit. An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when "the record is inadequate to

allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the administrative record was not ambiguous or inadequate to allow for proper evaluation of the evidence and to make appropriate findings regarding plaintiff's RFC. The ALJ discussed in detail plaintiff's medical records and evidence of plaintiff's mental impairment. Based on the existing medical records and opinions, the ALJ concluded that the record contained sufficient information to render an informed decision as to plaintiff's impairments. Plaintiff has failed to demonstrate that the evidence was so ambiguous or inadequate as to require the ALJ to order any additional examination. The ALJ did adequately address all of the limitations identified by plaintiff, her treating medical sources, and her examining and non-examining doctors in determining her RFC as required by SSR 98-6p.

### C.  Step Four Findings

Finally, plaintiff argues the ALJ's step four findings are unsupported by the evidence because the hypothetical presented to the VE contained defective RFC findings. As such, plaintiff argues, the ALJ's finding that plaintiff could perform past relevant work is unsupported by substantial evidence. Plaintiff contends the hypothetical question her attorney presented to the

VE, which was based upon Ms. Baskett's opinion, demonstrated that plaintiff was unable to perform her past relevant work.

An ALJ may rely on the testimony of a VE that is elicited with a hypothetical question that sets forth all the limitations of the claimant. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). A hypothetical which fails to include all of a claimant's limitations does not constitute substantial evidence to support a finding that the claimant can perform certain jobs. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989); *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir.2001).

In making her argument, plaintiff does not identify what limitations were left out of the ALJ's hypothetical to the VE, but instead states the hypothetical "did not reflect a comprehensive RFC, as discussed above." Plaintiff essentially contends that testimony she argued was improperly discounted should have been included. The court has found that the ALJ properly discounted the challenged testimony and opinion evidence. Without identification of the particular limitation plaintiff claims was omitted from the hypothetical to the VE, on this record, therefore, the court finds the ALJ's hypothetical was properly stated and complete. *See Stubbs-Danielson*, 539 F.3d at 1175-76. Accordingly, the VE's testimony that plaintiff

was able to perform past relevant work is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED. A judgment should be prepared accordingly.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days from service of the Findings and Recommendation. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991). If no objections are filed review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this ____ day of April, 2013.

_____
Mark D. Clarke
United States Magistrate Judge